IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MATTHEW CANTRELL,

  **Plaintiff,**

  vs.               CIVIL NO. 06-664 LCS/RLP

STATE FARM FIRE AND CASUALTY
COMPANY,

  **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment, filed January 24, 2007. (Doc. 27.) The Court, acting upon consent and designation pursuant to 28 U.S.C. § 636(c), having considered the motion, pleadings, memoranda, exhibits, and relevant authorities, finds that there is no genuine issue of material fact and that the motion should be **GRANTED**.

  **I.**  **FACTS.**

To the extent that any facts are disputed, I find that they are immaterial. That said, the Court finds the following undisputed material facts:

Plaintiff Matthew Cantrell is a resident of Albuquerque, New Mexico. (Doc. 1.) Defendant State Farm Fire and Casualty Company ("State Farm") is a foreign corporation with its principal place of business outside of New Mexico. (*Id.*) The claims in the instant complaint arise from an alleged failure by State Farm to fulfill its contractual duties to defend and indemnify Plaintiff in a prior lawsuit. (*Id.*; *see also* Docs. 27 and 29.)

On October 12, 2005, Plaintiff's daughters ("A.C. and C.R.") sued him in state district court

(this suit will hereinafter be referred to as "the underlying suit," and the complaint in the underlying suit will hereinafter be referred to as "the underlying complaint").[1] (Doc. 27, Ex. A.) A.C. and C.R.

---

[1] The complaint states in its entirety:

### COMPLAINT FOR DAMAGES ARISING FROM PERSONAL INJURY, BATTERY, AND SEXUAL ABUSE

COME NOW, Plaintiffs A.C. and C.R., by and through their attorneys of record, MARTINEZ, HART & CHASE, P.C., by F. Michael Hart, and for their Complaint against Matthew Cantrell state:

#### I. JURISDICTION AND VENUE

1. The events alleged herein occurred within Bernalillo County, New Mexico.
2. Jurisdiction and venue is appropriate in this Court.

#### II. GENERAL ALLEGATIONS

3. Defendant Matthew Cantrell maintained a parental role and non-related responsibilities to the Plaintiffs. Over the course of several years, Defendant Matthew Cantrell, sexually, emotionally, and physically abused the Plaintiffs.
4. Defendant Matthew Cantrell intentionally and maliciously inflicted physical, emotional, and sexual abuses and harms on each of the Plaintiffs, while they were minor children, clearly dependent upon him for safety, security, and parental protection.
5. Each of the Plaintiffs have suffered severe and permanent harms as a direct result of Defendant Matthew Cantrell's conduct as alleged.

#### COUNT I
#### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

6. The Plaintiffs reallege all allegations above as though each statement were set forth in full below.
7. Defendant Matthew Cantrell intentionally inflicted emotional distress and harm.
8. As a result of the infliction of emotional distress and harm, the Plaintiffs have suffered injuries and damages.

#### COUNT II
#### BATTERY

9. The Plaintiffs reallege all allegations above as though

asserted two specific claims against Mr. Cantrell. (*Id.*) The first claim was for intentional infliction of emotional distress and the second claim was for battery. (*Id.* at 2.) A.C. and C.R. also generally alleged, outside of any specific claim, that Mr. Cantrell sexually, emotionally, and physically abused them. (*Id.* at 1.) The case settled through mediation on April 12, 2006. (Doc. 1.)

On February 8, 2006, before the underlying suit had settled, Plaintiff made demand on State Farm for defense and indemnification pursuant to a homeowner's insurance policy he held with the insurance company. (Doc. 29, Ex. 1.)[2] State Farm refused coverage on the basis that the "facts and allegations surrounding [the] matter [did] not meet the policy definition of 'bodily injury' or 'property damage' caused by an 'occurrence[,]' . . . [and that] even if the insuring agreement were ever deemed to have been met during the policy period, the intentional acts exclusion precludes coverage." (Doc. 29, Ex. 4 at 1-2.) The specific policy language referenced, relevant here, read as follows:

---

each statement were set forth in full below.
   10.   Defendant Matthew Cantrell committed batteries and other offensive, unconsented acts on each of the Plaintiffs, while they were minors in his custody.
   11.   As a direct and proximate result of the batteries inflicted by Defendant Matthew Cantrell, the Plaintiffs have suffered severe and permanent harms.

   WHEREFORE, the Plaintiffs pray the Court find in their favor and against Defendant Matthew Cantrell in an amount sufficient to compensate them for all injuries and damages they have suffered as alleged. Further, Plaintiffs pray an award of punitive damages as provided by law, together with all costs and interest recoverable.

(Doc. 27, Ex. A.)

[2] Exhibits attached to Plaintiff's response to Defendant's motion for summary judgment are not labeled. I will therefore refer to them by number in order of their attachment, e.g, "Ex. 1" refers to the first attachment to Plaintiff's brief.

3

Section II - Liability Coverages

Coverage L - Personal Liability

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

. . . .

Section II - Exclusions

1. Coverage L. . . [does] not apply to:

   a. bodily injury or property damage:

      (1) which is either expected or intended by an insured; or

      (2) which is the result of willful and malicious acts of an insured;

. . . .

1. "bodily injury" means physical injury, sickness, or disease to a person. Bodily injury does not include: . . . d. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.[3]

---

[3] Any dispute in this case regarding whether the insurance policy covered alleged emotional and mental damages based upon the source of such damages is irrelevant to this

>     . . . .
>
>     7.   "occurrence", when used in Section II of this policy,
>          means an accident, including exposure to conditions, which
>          results in: (a) bodily injury . . . .

(*Id.*)

On June 19, 2006, Plaintiff filed the instant complaint against State Farm in state district court. (Doc. 1.) State Farm filed a notice of removal based upon federal diversity jurisdiction on July 26, 2006, and filed its motion for summary judgment on January 24, 2007. (Doc. 27.) Plaintiff responded on February 23, 2007. (Doc. 29.) Defendant replied on March 8, 2007. (Doc. 32.)

## II.   SUMMARY JUDGMENT STANDARD.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Generally, the Movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citation omitted). When applying this standard, the Court examines the record and reasonable inferences "in the light most favorable to the nonmoving party." *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

---

decision. I need not make such a determination because, assuming such damages *would* be covered, as will be shown, the complaint cannot be interpreted to allege accidental occurrences causing these damages.

(1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The Movant's initial burden may be discharged by showing "there is an absence of evidence to support the non-moving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the Movant meets its burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue for trial on a material matter. *See Simms*, 165 F.3d at 1326 (citation omitted).

### III.     ANALYSIS.

Plaintiff asserts several claims in the complaint, including claims for insurance bad faith, violation of the Unfair Practices Act, violation of the New Mexico Insurance Code, and breach of contract. (Doc. 1.) Each of these claims is premised upon allegations that Defendant breached its duty to defend and its duty to indemnify under a homeowners insurance policy it held with Plaintiff when Plaintiff was sued by his two daughters in the underlying lawsuit. (Doc. 1.) In Defendant's motion for summary judgment, Defendant challenges the very existence of the two duties it allegedly owed Plaintiff in that lawsuit. Plaintiff's response seeks to show that the duties did exist. I find that there is no genuine issue of material fact. The parties do not dispute the insurance contract language, the actual language of the complaint in the underlying lawsuit, or the other material facts as set forth above. I additionally find that as a matter of law, Defendant had no duty to defend or indemnify Plaintiff in the underlying lawsuit, and that Defendant is entitled to summary judgment. I will proceed by discussing first Defendant's duty to defend, and second Defendant's duty to indemnify.

### A.     The Duty to Defend

Defendant had no duty to defend Plaintiff in the underlying lawsuit and is entitled to summary judgment on all claims arising from an alleged breach of the duty to defend. The allegations in the underlying lawsuit's complaint fit squarely within the coverage exclusion and fell completely outside

6

policy coverage.

### 1. <u>The Duty to Defend Standard</u>

The duties to defend and indemnify are distinct from one another. *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 619, 642 P.2d 604, 605 (1982). The duty to defend arises from the allegations on the face of the complaint.[4] *Id.* at 605-06 (citation omitted). "If the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Id.* at 605 (internal quotation marks and citation omitted). "Only where the allegations are completely outside policy coverage may the insurer justifiably refuse to defend." *State Farm Fire & Casualty Co. v. Price*, 101 N.M. 438, 442, 684 P.2d 524, 528 (Ct. App.) *cert denied*, 101 N.M. 362, 683 P.2d 44 (1984) overruled on other grounds, *Ellingwood v. N.N. Investors Life Ins. Co.,* 111 N.M. 301, 805 P.2d 70 (1991) (citation omitted). "[A]ny doubt about whether the allegations are within policy coverage is resolved in the insured's favor." *Id.* (citation omitted). Where a complaint states facts within a policy's coverage, "an insurer has a duty to defend even if its own investigation reveals that the claim sued upon is not in fact covered." *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 857

---

[4] New Mexico also recognizes a duty to defend where there are facts known by the insurer but not pleaded that bring the claim arguably within the scope of coverage. *See Southwest Steel Coil, Inc. v. Redwood Fire & Casualty Ins. Co.*, 2006-NMCA-151, 140 N.M. 720, 148 P.3d 806, 812. This rule, however, is inapplicable in the present case, as there is no allegation or evidentiary submission that indicates, in the least, that Defendant had knowledge of any facts, not pleaded, that might have brought the underlying suit's claim within the scope of coverage. For example, had Plaintiff argued in his response and submitted evidence to show that Plaintiff was incapacitated (so as to negate any intent) when he perpetrated the acts alleged in the underlying lawsuit, and that Defendant knew of this incapacity, this rule might come into play. Plaintiff has made no such argument and has submitted no evidence to support such a position. In fact, the only submission regarding capacity is deposition testimony from Plaintiff's psychiatrist, submitted by Defendant, indicating that Plaintiff was under no mental incapacity. (*See* Doc. 27, Ex. H at 2, p. 28, lines 2-23.)

7

F. Supp. 822, 832 (D.N.M. 1994); *see also Mullenix*, 97 N.M. at 620, 642 P.2d at 606. The complaint, though, must state facts that "tend to show an occurrence within the coverage." *Mullenix*, 97 N.M. at 619-20, 642 P.2d at 605-06.

### 2. **The Duty to Defend Analysis**

Defendant argues that the complaint in the underlying suit made no allegations that might have brought the suit within the policy coverage. (Docs. 27 at 9-11; 32 at 2-3.) Specifically, Defendant contends that the complaint alleged only injuries falling within the policy's exclusion for injuries that were expected or intended, or injuries resulting from Plaintiff's willful or malicious acts. (*Id*.) Plaintiff resists Defendant's position, specifically contending that paragraph three of the underlying complaint is ambiguous and could be interpreted to allege injuries resulting from unintentional acts. (Doc. 29 at 10-14.) After my own thorough review of the complaint, drawing all reasonable inferences in favor of Plaintiff, I conclude that Defendant must prevail. The complaint in the underlying lawsuit simply *cannot* be interpreted as alleging injuries resulting from acts covered by the policy, or for that matter anything other than injuries expected or intended, or injuries resulting from Plaintiff's willful and malicious acts.

The parties do not appear to dispute the actual language or meaning of the policy. Specifically, they do not disagree on the presence or meaning of the terms "occurrence," "expected," "intended," "willful," or "malicious" in the policy. (Docs. 27 at 6, 12; 29 at 2.) The parties appear to agree that the policy covered injuries resulting from "occurrences" that were "accidents," and excluded intended injuries and injuries resulting from willful and malicious acts. (*Id*.) Black's Law Dictionary defines an "accident" in the context of an insurance contract as "an event happening without any human agency, or, if happening through such agency, an event which, under

circumstances, is unusual and not expected by the person to whom it happens." BLACK'S LAW DICTIONARY 15 (6th ed. 1990). "[I]n its common signification the word means an unexpected happening without intention or design."[5] *Id*.

The complaint in the underlying suit does not allege any injuries resulting from accidents. As noted above, the complaint asserts two specific claims, and sets forth three "general allegations." Because Plaintiff's argument is focused upon the "general allegations," I will concentrate my analysis there after briefly discussing the two specific claims.

### The Specific Claims

"Count I" of the underlying complaint asserts a claim for "intentional infliction of emotional distress." (Doc. 27, Ex. A at 2.) Specifically, the claim incorporates general allegations that Plaintiff sexually, emotionally, and physically abused his children, and it asserts that Plaintiff "intentionally inflicted emotional distress and harm" upon them. (*Id*. at 1-2.) New Mexico generally follows the Restatement (Second) of Torts in defining intentional infliction of emotional distress. *Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, 131 N.M. 607, 616, 41 P.3d 333, 342. "Intentional infliction of emotional distress arises when a defendant intentionally or recklessly causes severe emotional distress through extreme and outrageous conduct." *Jaynes v. Strong-Thorne Mortuary, Inc*., 1998-NMSC-004, 124 N.M 613, 618, 954 P.2d 45, 50 (citation omitted); *see also* RESTATEMENT (SECOND) OF TORTS § 46 (1965).

Certainly, a claim for intentional infliction of emotional distress results from actions taken under human agency. Further, it is simply unfathomable that such conduct is unusual or unexpected

---

[5] Importantly, in the context this case, any unusual or unexpected events, or unexpected happenings, would be the alleged actions of Mr. Cantrell in the underlying complaint, as it is Mr. Cantrell who seeks coverage here.

by the very person committing the act. Indeed, the Restatement (Second) of Torts provides that:

> [t]he rule . . . applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly . . . in deliberate disregard of a high degree of probability that the emotional distress will follow.

RESTATEMENT (SECOND) OF TORTS § 46 cmt. i (1965). Thus, the underlying complaint's claim for intentional infliction of emotional distress is entirely outside of the insurance policy's coverage. Furthermore, any conduct so outrageous as to support a claim for intentional infliction of emotional distress, even where any particular harm is unintended, would surely constitute an intentional and malicious act.[6] Notably, nowhere does Plaintiff appear to dispute this conclusion.

"Count II" of the underlying complaint asserts a claim for "battery." (Doc. 27, Ex. A at 2.) The claim incorporates general allegations that Plaintiff emotionally, physically, and sexually abused his children, and it alleges that Plaintiff committed "batteries and other offensive, unconsented acts on each of the Plaintiffs . . . ." (*Id*. at 1-2.) A battery is committed when one "acts intending to cause a harmful or offensive contact . . . ." *Kabella v. Bouschelle*, 100 N.M. 461, 462, 672 P.2d 290, 291

---

[6] The New Mexico Court of Appeals has held that:

> Referring to the operative phrase 'extreme and outrageous conduct,' the commentary to the Restatement cautions that . . . *[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Padwa v. Hadley*, 1999-NMCA-067, 127 N.M. 416, 419, 981 P.2d 1234, 1237 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)) (emphasis added).

(Ct.App. 1983). Battery is a tort that requires intent. *Yount v. Johnson*, 1996-NMCA-046, 121 N.M. 585, 590, 915 P.2d 341, 346; *see also* RESTATEMENT (SECOND) OF TORTS § 13 (1965); *see also Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1208-09 (10th Cir. 2006) (defining battery in New Mexico as an intentional act). Intended harm and harm resulting from intentional acts is clearly excluded from coverage under the insurance policy. Thus, the underlying complaint's claim for battery is entirely outside of the insurance policy's coverage. Again, notably, Plaintiff does not appear to dispute this conclusion.

### The General Allegations

Paragraphs 3-5 of the underlying complaint make "general allegations." (Doc. 27, Ex. A at 1.) Defendant argues that these paragraphs are unambiguous and do not allege unintentional acts or harm incurred by mere accident. (Doc. 32 at 3, 8.) Specifically, Defendant argues that the allegations are derived from Mr. Cantrell's sexual misconduct. (*Id.* at 8.) Plaintiff concentrates his argument on paragraph 3 and contends that the language in this paragraph is ambiguous. (Doc. 29 at 10.) Specifically, Plaintiff argues that the language may be interpreted to allege negligent or accidental occurrences. (*Id.*) Paragraph 3 of the underlying complaint provides in part that: "Matthew Cantrell . . . sexually, emotionally, and physically abused . . . [his children]."[7] (Doc. 27, Ex. A at 1.) I find that I need not go so far as to determine from where these allegations arose. On its face, paragraph 3 clearly alleges only conduct outside of the insurance policy's coverage. I base this conclusion on two independent grounds.

---

[7] Plaintiff does not appear to dispute that paragraphs four and five of the underlying complaint allege only conduct falling within the coverage exclusion. (*See* Doc. 29 at 10.) ("[p]aragraph 4 specifically lables the . . . conduct as intentional). I will therefore address only paragraph three.

11

First, the plain meaning of the language in Paragraph 3 clearly alleges intentional and malicious conduct; conduct that is clearly beyond accidental. I have strained my imagination to find some ambiguity in the complaint's phraseology that might allow me to draw a reasonable inference in favor of Plaintiff's position, but I quite simply do not see one. "Abused" is the operative word in the allegation. The terms "sexually," "emotionally," and "physically" all modify this term. "Abused" is a verb stemming from the noun "abuse." BLACK'S LAW DICTIONARY 10-11 (6th ed. 1990). "Abuse" is generally defined as: "[a] [d]eparture from reasonable use. Physical or mental maltreatment. Misuse . . . ." (*Id*. at 10.) In the context of the underlying complaint, i.e. abuse of female children, the term is defined as: "[a]n injury to the genital organs in an attempt at carnal knowledge . . . . [E]quivalent to ravishment or rape." (*Id*. at 11.) These definitions are all indicative of intentional and malicious conduct. They do not encompass accidental occurrences. Indeed, one need only look to the definition of child abuse under New Mexico law:

> Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be:
>
> (1) placed in a situation that may endanger the child's life or health;
> (2) tortured, cruelly confined or cruelly punished; or
> (3) exposed to the inclemency of the weather.

N.M. STAT. ANN. § 30-6-1(D)(1) (1978). "Negligently" is defined as "criminal negligence and means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." N.M. STAT. ANN. § 30-6-1(A)(3) (1978). Certainly, the allegation in paragraph 3 of the underlying complaint involves human agency, and I simply do not see how it can be said that maltreatment, misuse, an attempt at carnal knowledge, or even an act taken in reckless disregard for the safety or health of a child, can be said to be unusual or unexpected by

12

the very person who allegedly perpetrated the act.  Furthermore, I fail to see how the harm allegedly stemming from the act may have been unintended or unexpected, or even if the actual harm was unintended, how the act itself could not have been intentional and malicious.

Second, even if some ambiguity were to exist in the plain language of paragraph 3, it would be completely resolved when viewing the allegation in light of the entire complaint.  Paragraph 3 is incorporated into and used in support of the two specific claims I discussed above.  These claims, as I have already discussed, set forth only intentional torts that are entirely outside of the insurance policy's coverage.  There is no specific claim made for negligence, nor are any of the elements of negligence specifically alleged.  Had Plaintiffs in the underlying suit wanted to assert a claim for negligence, they certainly could have done so.  As the language stands, though, I simply do not see how it would be reasonable to infer a claim based upon negligence.

Plaintiff argues that it is reasonable to interpret paragraph 3 as alleging a negligence claim in light of paragraph 4, which clearly alleges intentional conduct. (Doc. 29 at 10.)  Plaintiff argues that to read both paragraphs as alleging intentional conduct would be redundant.  I disagree with this argument.  I find that the paragraphs are properly read together; paragraph 4 as being explanatory of paragraph 3. Paragraph 3 alleges that: "Matthew Cantrell maintained a parental role and non-related responsibilities to the Plaintiffs." (Doc. 27, Ex. A at 1.)  Paragraph 4 then elaborates on this allegation, stating that: "while [Cantrell's children] were minor[s] . . ., [they were] clearly dependent upon him for safety, security, and parental protection." (*Id*.)  Paragraph 3 alleges that: "[o]ver the course of the years, . . . Matthew Cantrell[] sexually, emotionally, and physically abused the Plaintiffs." (*Id*.)  Paragraph 4 then provides that: "Matthew Cantrell intentionally and maliciously inflicted physical, emotion, and sexual abuse and harms on each of the Plaintiffs . . . ."  Moreover,

13

as I have already discussed, the specific claims in the complaint are for intentional torts, not negligence. This fact further supports reading the paragraphs together. Finally, I simply fail to see how an allegation of sexual, emotional, and physical abuse can be construed as an allegation that falls under the policy's coverage of accidental occurrences. Also, as I have already stated, even if any particular harm was unintended, I do not see how the alleged acts that caused the harm could be interpreted as anything less than intentional and malicious.

Plaintiff also argues that this Court's decision in *State Farm Fire & Casualty Co. v. Ruiz*, 36 F.Supp.2d 1308 (D.N.M. 1999), which involved a similar insurance policy, supports a finding that the complaint may be read to allege a negligence claim. Specifically, Plaintiff contends that:

> In *Ruiz*, State Farm argued that because the child abuse statute under which its insured was convicted required both an abusive act by the parent and proof 'that the defendant knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child,' the facts alleged in the complaint do not allege an 'accident' and clearly fall outside the policy coverage. The court rejected State Farm's argument, specifically finding that the statute 'left room for the possibility that he acted with gross negligence but not with the intent to injure or kill his son.' The court held that 'the allegations of the complaint did not clearly plead facts which were inconsistent with an accident or which eliminated the possibility that [the child's] injuries were not intended.'

(Doc. 29 at 12.) (citations omitted) I disagree with Plaintiff's argument. *Ruiz*, while persuasive, is not binding precedent here. Moreover, in the context of this action and the specific claims alleged, I do not believe there is any ambiguity in the abuse allegation that leaves room to infer gross negligence. Furthermore, *Ruiz* is distinguishable on at least two grounds. First, *Ruiz* involved an underlying complaint that explicitly alleged claims for both negligence and negligence per se. *Ruiz*, 36 F.Supp.2d at 1313-14. On the face of the complaint, there was specific claim language indicating

an act that could have been interpreted as accidental. Here, the only specific claims alleged are for intentional torts. Second, while the insurance policy in *Ruiz* was similar, it was apparently not the *same*. The facts state that: "[t]he policy provided coverage for bodily injury caused by an 'occurrence' which is defined as an 'accident.' The policy specifically excluded injuries 'either expected or intended by an insured.'" *Id*. at 1310. I have found no other coverage exclusion language referred to in that case. Here, the policy contains the same coverage and exclusion language except that there is an *additional* exclusion. The policy in the instant case also excludes any injury "which is the result of willful and malicious acts of an insured." (Doc. 29, Ex. 4.) Thus, the policy excludes acts done with an intent to injure, as did the policy in *Ruiz*, but it additionally excludes willful and malicious acts that *cause* injury. The latter exclusion does not require an intent to injure. The only requirement is that the act causing the injury be willful and malicious. Even if the abuse allegation in paragraph 3 might be interpreted as an act done necessarily without the intent to injure, I fail to see how it can be interpreted as an unintentional and non-malicious act altogether, for the reasons I have already discussed above. Thus, I find that Defendant had no duty to defend Plaintiff in the underlying suit, and that Defendant is entitled to summary judgment on all claims arising from an alleged breach of this duty.

### B. The Duty to Indemnify

Defendant had no duty to indemnify Plaintiff in the underlying lawsuit and is entitled to summary judgment on all claims arising from an alleged breach of the duty to indemnify. The undisputed material facts show that the claims in the underlying lawsuit involved actions that fit squarely within the insurance policy's coverage exclusion and fell completely outside policy coverage.

#### 1. The Duty to Indemnify Standard

15

Generally, "[a]n insurer's duty to . . . indemnify . . . depends on proof of actual, rather than alleged, facts to establish the claim." AM. L. PROD. LIAB. 3d § 58:4 (2007). In New Mexico, "[i]f the allegations of the . . . complaint clearly fall outside the provisions of . . . [the] liability insurance polic[y], indemnity by the insurer is not required." *New Mexico Physicians Mut. Liability Co. v. LaMure*, 116 N.M. 92, 95, 860 P.2d 734, 737 (1993). If an event falls fully within an exclusion to coverage, the insurer will have no duty to indemnify. *Knowles v. United Services Auto. Ass'n,* 113 N.M. 703, 705-06, 832 P.2d 394, 396-97 (1992). The insurer, though, is under an "obligation . . . to draft an exclusion that clearly and unambiguously excludes coverage." *Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 2002-NMCA-054, 132 N.M. 264, 266, 46 P.3d 1264, 1266 (citation omitted). "New Mexico courts do not give effect to a party's undisclosed intentions about coverage." *Id*. (citation omitted). "In construing standardized policy language, [the Court's] focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured, who, we assume, will have limited knowledge of insurance law." *Id*. (citation omitted).

### 2. <u>The Duty to Indemnify Analysis</u>

My analysis here will be brief. As I discussed above regarding the duty to defend, the parties do not dispute the language of the insurance policy or its meaning. *See* discussion *supra* Part III, A, 2. The parties apparently agree as to what is covered and what is excluded, and, therefore, I need not engage in a lengthy analysis as to the policy language. The parties' dispute is simply as to whether the allegations in the underlying complaint may be construed as asserting a claim potentially covered by the insurance policy. I have already determined that the allegations in the underlying complaint *cannot* be so construed. Thus, my reasoning in Part III, A, 2 of this opinion, supports my

finding here that Defendant was under no duty to indemnify in the underlying suit. I supplement my finding with two additional points.

First, Plaintiff does not contest in his response to the motion for summary judgment that Defendant had no duty to indemnify. (*See* Doc. 29.) The only argument Plaintiff appears to make that even pertains to indemnification is that indemnification is required because Defendant unjustifiably breached its duty to defend. (*Id.* at 16-17.) Since I have already determined that Defendant was under no duty to defend, Plaintiff's argument is baseless. Having made no argument in support of the duty to indemnify, and considering that Defendant has argued and submitted evidence to show that it had no such duty, (*see* Doc. 27) Plaintiff is deemed to have abandoned any claims arising from the duty to indemnify. *See Burfield v. Babbitt*, 272 F. Supp 2d 1233, 1240 (D.N.M. 2001) ("By failing to respond to [Defendant's] arguments, Plaintiff can be deemed to have abandoned her claims."); *see also* FED. R. CIV. P. 56(e), (f).

Second, none of the evidence submitted in support of the briefing regarding the motion for summary judgment indicates that Plaintiff's liability in the underlying suit fell within the insurance policy coverage. Rather, all of the evidence demonstrates that, if anything, liability fell completely within the insurance policy exclusion for intentional acts. Defendant's evidence consists of exhibits showing that Plaintiff pled guilty to abuse-related crimes requiring intent, (Doc. 27, Exs. C, D) and that Plaintiff's acts supporting the underlying lawsuit were admittedly intentional and willful.[8] (Doc.

---

[8] The sole bit of evidence demonstrating that Mr. Cantrell did not willfully sexually abuse one of his daughters is one denial in Mr. Cantrell's responses to requests for admissions in the underlying lawsuit. (Doc. 27, Ex. F.) Mr. Cantrell states "[d]eny" in response to "[a]dmit: [t]hat you willfully sexually abused [A.C.]" (*Id.* at 3.) I find that this denial by itself is hardly demonstrative of Mr. Cantrell's intent. It could easily be interpreted as a denial of abuse altogether. Moreover, this particular response is insignificant in light of all of the other evidence submitted.

27, Exs. F, G, H.) Plaintiff's exhibits in support of his response to the motion for summary judgment offer no counter-evidence whatsoever. Thus, I find that Defendant was under no duty to indemnify Plaintiff in the underlying suit and is entitled to summary judgment on all claims arising from this alleged duty.

### IV.    CONCLUSION.

The submissions of the parties show that there is no dispute as to any material fact in this case. After reviewing all of the parties' submissions and all relevant documents, I find that the undisputed material facts establish that, as a matter of law, Defendant State Farm was under no duty to defend or indemnify Plaintiff Matthew Cantrell in the underlying suit. Since all of the claims in the instant lawsuit arise from an alleged breach of these two duties, Defendant State Farm is entitled to summary judgment.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED as to all claims.**

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**